**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**July 9, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

LOU ELLA SEYMORE,

    Plaintiff - Appellant,

and

JOSEPH PARKER; YVETTE HILL,

    Plaintiffs,

v.

TULSA TECHNOLOGY CENTER, a/k/a
Tulsa Tech, a/k/a Tulsa Tech.EDU,

    Defendant - Appellee.

No. 23-5127
(D.C. No. 4:22-CV-00549-CVE-SH)
(N.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Plaintiff Lou Ella Seymore, a student at Tulsa Technology Center (TTC), filed

a pro se complaint alleging, in relevant part, that she was subjected to racially

motivated harassment by one of her instructors and then retaliated against for

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

complaining about that harassment. The district court dismissed Ms. Seymore's complaint without prejudice for failure to state a claim upon which relief could be granted and thereafter denied her motion for relief from judgment. Ms. Seymore now appeals. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

I

*The complaint*

Ms. Seymore, along with Joseph Parker and Yvette Hill, initiated these proceedings in December 2022 by filing a pro se complaint against defendant TTC. All three plaintiffs alleged they were enrolled as students at TTC and were subjected to "discriminatory and retaliatory actions" by TTC. R. vol. I at 8.

For her part, Ms. Seymore, who is black, alleged that an instructor at TTC named Jimmy Hawley "constantly harassed" her because of her race. *Id.* at 12. As an example of Mr. Hawley's harassment, Ms. Seymore alleged that he denied her the opportunity to take an "EPA 608 Test along with the other Students" and instead forced her to take the test "during a 'lock down, active shooter, and fire drill,'" which required her "to travel downstairs and outside the building during" her "allotted test time." *Id.* at 13. Ms. Seymore alleged that Mr. Hawley also "encouraged other Students in the program to harass her." *Id.* at 12. According to Ms. Seymore, a student "bounced a basketball on a table where" she was doing her assignments and another "person intentionally locked" her "out of the lab area." *Id.*

Ms. Seymore complained to TTC about Mr. Hawley's conduct. Two TTC employees met with Ms. Seymore and told her that Mr. "Hawley's harassing behavior . . . would cease." *Id.* at 11. Those two employees, however, asked to meet with Ms. Seymore again the following day and, during that second visit, "ridicule[d]," "intimidate[d]," and "harass[ed]" her. *Id.* In particular, the two employees told Ms. Seymore "that the problem was 'teaching style, learning style,'" and that if she "didn't like it, that [she] should leave." *Id.* A few days later, one of those employees allegedly telephoned Ms. Seymore and told her "not to return until they 'figured out what to do.'" *Id.* Mr. Hawley subsequently counted Ms. Seymore "absent with no excuse," and she alleges his "intent was to fail [her] for non-attendance," despite having told her not to return to class. *Id.* Mr. Hawley also allegedly "deactivated" Ms. Seymore's "key card" and "unjustly denied" her "entrance into all buildings." *Id.*

Ms. Seymore alleged that these actions resulted in violations of Title VI of the Civil Rights Act of 1963.[1] She asked for a declaratory judgment, injunctive relief, compensatory damages, punitive damages, and fees and costs.

*The district court's dismissal of the complaint*

TTC moved to dismiss the complaint, arguing in relevant part that the plaintiffs failed to state valid claims for relief. Only Ms. Seymore responded to

---

[1] Ms. Seymore's complaint also alleged violations of Section 504 of the Rehabilitation Act of 1964, Title II of the Americans with Disabilities Act, and Title IX of the Education Amendment of 1972. Those claims are not at issue in this appeal.

TTC's motion. The district court granted TTC's motion and dismissed all of the claims without prejudice pursuant to Fed. R. Civ. P. 12(b)(6). In doing so, the district court concluded, in relevant part, that Ms. Seymore's allegations were insufficient to support her claims under Title VI. Notably, the district court granted plaintiffs leave to amend their complaint and advised them that their failure to file an amended complaint within twenty-one days would result in dismissal of the entire case.

None of the plaintiffs filed an amended complaint. As a result, the district court dismissed the case without prejudice and entered final judgment.

Ms. Seymore filed a pro se motion for relief from judgment. She alleged in her motion that, around the time the district court issued its initial decision dismissing the claims without prejudice, she "had a series of personal issues, serious medical issues, and mental impairment." *Id.* at 168. Ms. Seymore alleged that, due to these issues, "[s]he read the first page" of the district court's order "and went immediately to what she perceived to be the last page," which "stated 'dismissed without prejudice.'" *Id.* at 169. Ms. Seymore alleged that she understood that phrase to mean that she could "refile the complaint within a year." *Id.* According to Ms. Seymore, she "did not see the back of that page which had the instructions to amend the complaint within 21 days." *Id.* Ms. Seymore alleged that it was not until later that she "realize[d] that she had missed the deadline" and she thereafter acted as diligently as possible to contact the district court and notify it of what had occurred.

*Id.* Ultimately, Ms. Seymore argued that she had established "'inadvertence'" and "'excusable neglect'" for purposes of Fed. R. Civ. P. 60(b). *Id.* at 172.

The district court denied Ms. Seymore's motion for relief from judgment. The district court noted that Ms. Seymore "failed to explain how her medical issues prevented her from fully reviewing the opinion and order" and it found that "[n]o impairment or medical condition prevented" her "from filing an amended complaint." *Id.* at 122. Accordingly, the district court declined to reopen the case to allow Ms. Seymore to file an amended complaint.

Ms. Seymore now appeals.

II

Ms. Seymore challenges the district court's decision to dismiss her Title VI claims pursuant to Rule 12(b)(6). We review de novo a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6). *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). In conducting our review, we accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Id.* If the complaint includes "enough facts to state a claim to relief that is plausible on its face," then dismissal is not warranted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ms. Seymore also challenges the district court's denial of her motion for relief from judgment. We review the "district court's Rule 60(b) decision for an abuse of

5

discretion." *Waetzig v. Halliburton Energy Servs., Inc.*, 82 F.4th 918, 920 (10th Cir. 2023).

Because Ms. Seymore is proceeding pro se, we liberally construe her arguments, but will not act as her advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

A

Ms. Seymore begins by arguing that the district court erred in requiring her, as a pro se plaintiff, to state a claim for relief that was "plausible on its face." Aplt. Br. at 9 (emphasis omitted). She notes that the pro se complaint form provided to her by the district court clerk's office made no mention of this standard and, instead, instructed her simply to provide "a short and plain statement of the claim." *Id.*

We find no merit to Ms. Seymore's argument. Federal Rule of Civil Procedure 8(a)(2), which is applicable to all litigants, requires a complaint to include, in relevant part, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Twombly*, the Supreme Court discussed this requirement and explained that it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Instead, the Supreme Court held, it effectively imposes a "requirement of plausibility." *Id.* at 560. Here, the pro se complaint form that was provided to Ms. Seymore quoted the key language of Rule 8(a)(2) and notified her of the necessity to include a short and plain statement of her claims. There was no need, in our view, for the form to also advise Ms. Seymore that the "short and plain

6

statement" requirement effectively meant that the facts she alleged had to state plausible claims for relief.

Ms. Seymore also argues, relatedly, that "[i]t has long been a policy that a case should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Aplt. Br. at 5. This argument, however, lacks merit. In *Twombly*, the Supreme Court explained that the "'no set of facts' language," which derived from the Court's decision in *Conley v. Gibson*, 355 U.S. 41 (1957), was intended to "describe[] the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 550 U.S. at 563.

In sum, we conclude the district court did not apply any improper standards in dismissing Ms. Seymore's complaint.

B

Ms. Seymore next argues that the district court erred in concluding that her complaint failed to state a plausible claim of retaliation under Title VI. For the reasons discussed below, we agree with her.

Title VI prohibits race discrimination in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To establish a prima facie case for retaliation under Title VI, a plaintiff must show (1) she engaged in protected opposition to discrimination; (2) she suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action.

*See Estate of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014) (discussing retaliation claim under Title VII); *Peters v. Jenney*, 327 F.3d 307, 320–21 (4th Cir. 2003) (concluding, in reliance on Title VII decisions, that a Title VI retaliation claim has similar requirements).  The district court in this case concluded that Ms. Seymore's complaint failed to satisfy the second of these requirements.  But we disagree with that conclusion.

Ms. Seymore alleges she complained to TTC "about the discriminatory actions" of her instructor, Mr. Hawley, which allegedly included "constantly harass[ing]" her "and encourag[ing] other Students in the program to harass her."[2] R. vol. I at 11–12.  Two TTC employees allegedly met with Ms. Seymore in response to her complaint and told her Mr. Hawley's harassing behavior "would cease."  *Id.* at 11.  The following day, however, the same two TTC employees asked to meet with Ms. Seymore again and told her "the problem was 'teaching style, learning style'" and "that if [she] didn't like it, that [she] should leave."  *Id.*  A few days after this second meeting, one of the two TTC employees who had met with Ms. Seymore allegedly called her and told her "not to return until they 'figured out what to do.'"  *Id.*  Mr. Hawley then began counting Ms. Seymore "'absent with no excuse'" from class and one of the two TTC employees who had met with Ms. Seymore deactivated

---

[2] Ms. Seymore's complaint did not clearly identify the basis for Mr. Hawley's alleged discrimination, although she did repeatedly note her race.  But, in her response in opposition to the motion to dismiss, Ms. Seymore specifically alleged that Mr. Hawley discriminated against her on the basis of her race.  R. vol. I at 74 (referring to "intentional discrimination because of race" and "racial discrimination").

her key card. *Id.* Ms. Seymore alleged that she "was not allowed to complete Labs," "did not receive the Lecture time that the other Students received," and "was not allowed to participate in the Graduation Ceremony as the other Students." *Id.* at 13.

These allegations, we conclude, are sufficient to make out a prima facie case of retaliation for purposes of Title VI. To begin with, the allegations indicate that Ms. Seymore complained to TTC about racially discriminatory conduct on the part of Mr. Hawley, who was an instructor at TTC. The allegations in turn indicate that, shortly after Ms. Seymore complained, Mr. Hawley and one of the two TTC employees who received Ms. Seymore's complaint took several actions against her that negatively impacted, or at least had the potential to negatively impact, her education at TTC.[3] We conclude these allegations are sufficient to allow us to reasonably infer, at this stage of the litigation, that the actions taken were materially adverse.[4] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (noting that in the context of Title VII, a materially adverse action is one that would

---

[3] It is not clear from the complaint whether Mr. Hawley or one of the two employees to whom Ms. Seymore complained prevented her from attending the graduation ceremony. Further, we note that her appellate brief suggests that it was one of the two TTC employees she complained to, rather than Mr. Hawley, who counted her absent without an excuse. Aplt. Br. at 17–18. For purposes of this appeal, however, it is immaterial which person took these actions since all were employed by TTC and were aware of Ms. Seymore's complaint.

[4] The district court concluded there were "no allegations that defendant took any adverse action against" Ms. Seymore "because of" her complaint. R. vol. I at 154. As we have discussed, however, Ms. Seymore plainly alleged that several actions were taken against her shortly after she complained about Mr. Hawley's conduct.

likely "dissuade a reasonable worker from making or supporting a charge of discrimination"). Lastly, we conclude, given the temporal proximity between Ms. Seymore's complaint and the actions taken against her, that she sufficiently alleged a causal connection between these events. *See Lindsay v. Denver Pub. Schools*, 88 F.4th 1323, 1330 (10th Cir. 2023) (noting, in addressing a Title VII retaliation claim, that a plaintiff may show a causal connection by presenting evidence of the temporal proximity between the protected conduct and the materially adverse action).

C

In her third issue on appeal, Ms. Seymore argues that her complaint stated a plausible claim of a racially hostile environment in violation of Title VI. We find no merit to this argument.

To allege a plausible claim of a racially hostile environment under Title VI, the plaintiff must allege, in relevant part, that she was subjected to harassment based on her race and that the harassment was so severe, pervasive, and objectively offensive that it deprived the plaintiff of access to the educational benefits or opportunities provided by the school. *See Sneed v. Austin Indep. School Dist.*, 50 F.4th 483, 490 (5th Cir. 2022) (discussing Title VI claim based on student-on-student harassment); *Bryant v. Indep. School. Dist. No. I-38*, 334 F.3d 928, 934 (10th Cir. 2003) (same); *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1246 (10th Cir. 1999) (discussing requirements for establishing claim of hostile environment under Title IX).

10

Ms. Seymore alleges that her instructor, Mr. Hawley, "constantly harassed" her "and encouraged other Students . . . to harass" her because of her race. R. vol. I at 12. Her complaint described four instances of this harassment: (1) a student bounced a basketball on a table where she was doing her assignments; (2) an unidentified person "intentionally locked" her "out of the lab area"; (3) she "was required to climb on top of a room"; and (4) Mr. Hawley denied her the opportunity to take a test at the same time as other students.[5] *Id.* at 12–13. None of these actions, at least on their face, appear to be racially motivated. Even assuming otherwise, we conclude that, taken together, they were not so severe, pervasive, and objectively offensive that they deprived Ms. Seymore of access to the educational benefits or opportunities provided by the school. We therefore conclude the district court properly dismissed this claim pursuant to Rule 12(b)(6).

D

In her final issue on appeal, Ms. Seymore argues in conclusory fashion that the district court erred in denying her motion for relief from judgment. We have long held that it is insufficient for an appellant to merely state in their opening brief that they are "appealing an adverse ruling below without advancing reasoned argument as to the grounds for appeal." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1547

---

[5] It is unclear from the complaint whether Mr. Hawley denying Ms. Seymore the opportunity to take a test at the same time as other students was part of his harassing behavior towards her, or instead was part of the retaliatory conduct that occurred after she complained about him to other TTC staff members. For purposes of assessing the Title VI racially hostile environment claim, we will assume it was part of the harassing behavior.

11

(10th Cir. 1995) (internal quotation marks omitted). Although we liberally construe Ms. Seymore's pleadings due to her status as a pro se litigant, we will not, as we have noted, act as her advocate. Consequently, we reject this argument as inadequately briefed.

III

We affirm in part and reverse in part the judgment of the district court and remand the case to the district court for further proceedings consistent with this order and judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge